The first case of the day is 4-14-0349. In re the Marriage of Mittelsteadt. Attorney Appleton is here on behalf of the appellant. Attorney Mills is here on behalf of the appellee. Mr. Appleton, are you going to proceed? I have a note that Mr. Mills is not going to argue. That's correct, Your Honor. Okay. Mr. Appleton? Thank you, Your Honor. May it please the court, August Appleton, on behalf of the respondent appellant, Roger Mittelsteadt. My client's appeal to this court is seeking reversal due to February 21, 2014, or the April 2, 2014 Board of Court, both denying my client's petition to modify his maintenance and his subsequent motion to reconsider. I believe, combining myself and my client, that the findings of the court contained in the February 21st order are against the manifesto of the evidence and it is an abuse of the discretion of the court to enter that order. I believe that the findings of fact by the court were both arbitrary in the sense that I don't believe the court entertained the idea of my client's maintenance obligations being lowered in accordance with his reduction of income. And also, fanciful that they were based heavily on the belief that existed at the time the judgment was entered that my client's financial position would improve with just a little effort. Now, I think in looking at the marriage that was dissolved and led to this issue of maintenance, first of all, there's no disputed length of marriage. This was a very long marriage, 40 years. It was high school sweethearts who had four children. The marriage dissolved and broke down when my client's oldest daughter made allegations regarding abuse that she suffered by him as a younger child. This led to the divorce proceeding, a plenary order of protection, criminal charges against my client. His youngest daughter, who was 19 at the time in 2010. Now, my client, in regards to his income, he had a tenant farm. He inherited tenant farms from his father in the Mount Pulaski area of Logan County. So he was raised in this town, lived in this town his entire adult life, and worked the business that he inherited from his father, and also built a small excavation business that relied heavily on a contract with Logan County in the cemetery district. Now, throughout the marriage, the petitioner stayed home and raised her children and also helped my client with his postal records and annual filings. At around 1999 or 2000, she began to work outside the home and eventually became a pharmacy tech. Now, when the divorce decree was entered, the findings established by the court with my client's income from 2008 to 2010 were that he earned approximately $50,000 a year, maybe a little less than that, and she was becoming, according to the court's words, a rival earner of $35,000 a year. She was also awarded a marital home, free and unencumbered, and he was awarded his business property, which was heavily encumbered. Now, he had the ability to earn money with this equipment, but I think there was a presumption, and I think this presumption is very important when evaluating the February 21st and April 2nd order, and that's the presumption that the opportunities existed for him to go out and utilize this equipment and earn money potential. This was not a property that just earned income on itself. It was a property that inspired him to find the work, do the work, and then earn the income. So I think in looking at the order of the court and weighing the factors in the statute under 750 ILCS 5-510, along with the evidence, I believe the court abused its discretion by not lowering his maintenance obligation. Now, I think... Wouldn't the trial court have to have believed and had some faith in your client? Well, I think... Or the opposite. The trial court didn't believe your client. Well, I think... And didn't think that he made efforts and thought that he disposed of property and equipment without planning and perhaps with the thought that one might infer that would prevent him from earning a good income. And that led the court to say, I'm not going to reduce your maintenance obligation. I mean, how do you get over that? Well, I think how you get over that is you look at the clear language of the statute. In Section 1 it says, of either party and whether the change has been made in good faith. And I believe, given the clear language of that, that my client initially met that burden. He showed that there was a reduction in his income through the loss of a tenant lease and also a reduction in the income that he was going to receive from his excavation contracts. And the court made a finding that that was not through any fault of his own. And then it said, but you haven't done enough to find more income. Well, Mr. Appleton, what about factor number 9, any other factor that the court expressly finds to be just and equitable? How does that impact your argument with respect to your client's actions and the court's interpretation of those actions? Well, I think it goes to the manifest way of the evidence. And I don't think that the finding of fact that there was opportunity is supported by the evidence. I think in order to be a just and equitable finding, there would have to be some more evidence about what opportunities were available to him. And I think in his final testimony, you know, he testified it was a tough market. You know, the tenant leases were hard to find. And, you know, I think you have to look at what the evidence presents about my client, who he was, his ability to find this work. There's no evidence that he's ever even found a tenant before. And then he was charged with a duty after a very decimating couple years through the legal system, some of it albeit deserved, and some of it maybe through just a nasty divorce. But did we have any evidence that that had prevented him from getting work? I mean, I didn't see anything in the record that would indicate someone said, I'm not going to allow you to farm my land because you're a sex offender, or you're a sex offender, we're not going to give you this opportunity. I don't think that evidence is really presented in the record, but there's also a missing element of evidence that I believe the court should have seen where there was opportunities that he actually missed. You know, the court makes statements regarding he didn't present evidence, he checked classified ads or anything like that. There was no introduction of a recent publication that showed tenant farms available. You know, the court said we should have spoken with a banker, but there's no evidence presented that there were actually bankers that knew. Well, who has the burden in this proceeding? Well, I think it's his burden, but I think in the initial finding that there was a change of employment made in good faith that he met the burden there. And that in the court, in making a decision that it was going to deny the petition, had to essentially say, yes, you've met the burden. However, this is what I wanted to see. And I think with the findings of fact, you know, the court relied on his understanding of the industry, of the local market, and it made findings of fact both in the original divorce decree and I think in the later denial of the petition to modify maintenance that show some arbitrary conclusions regarding these facts. Well, did your client testify that he had called someone, if I'm remembering correctly, who used to be a banker with respect to farm issues and this person was no longer doing that and unable to help him in any way? Yeah, he did testify to that. And so is it a reasonable inference for the trial court to say, well, you know, that's all you did, you didn't try to reach out to anyone else in a similar position? I mean, doesn't the trial court bring to the proceedings common sense, just like a juror would to a jury trial and life experience? Yes, I believe that there is some common sense in the ability of the court to take general knowledge of what's going on in the community, the economy, and what his opportunities may be. However, I think to defeat him when I think that he initially met the first leg of the presumption, which was that he lost income and he don't have as much money and your ability to pay maintenance is hindered for no fault of his own, that once that has been met, there needs to be something affirmative to show that he could have found work and did not. Well, but isn't that his responsibility to bring in witnesses? You made reference to what the court said about outside knowledge or using his own. Those were simply examples. Those are examples of what you might have done. Or you could have called some witnesses. And you didn't. I admit there is a could have and perhaps should have element here, but I think in meeting the initial burden when you're drafting the petition and contemplating your witnesses, you look at the statute, and I think the element of good faith, whether or not the employment status of either party has changed and whether it was good faith. Look at this as maintenance on the other side. Let's suppose we have a spouse who's receiving maintenance and through whatever activity loses a job and comes in and says, I need maintenance to continue beyond the two or three year period that the court has given. What would the court say to that person? What have you done and what can you show me you have done to deserve to continue maintenance or to deserve to have maintenance increase? It would be the same kind of burden. You would expect that person to bring witnesses or bring evidence that says I've applied for nine jobs. I've registered for a class at the junior college that I take at night. It will upgrade my ability to find that new employment. There's none of that here. I think the difference is, especially in the statute with Factor 2, where it says the efforts, if any, of the party receiving maintenance to become self-supporting. Maintenance is disfavored, and the goal of maintenance is to make both parties self-supporting or to allow the dependent party to be financially independent. I think if you look at the manifest way of the evidence, the petitioner was pretty much financially independent, had a slight reduction in their lifestyle based on this loosened marriage. My client was admittedly, by the court, to the original divorce decree and a lesser position as what was enjoyed in the marriage. And then this obligation was still put on top of them. So I think in looking at the efforts that are made, there's a reason when the legislature crafted Section A5 that they made the efforts of the party receiving maintenance relevant and directly in the statute, while there's not a statement that the party paying maintenance has a continued obligation to, if possible, increase income or to do what they can to ensure that the maintenance obligation increases or betters what remains of the joint marital relationship. So I think on the flip side, when somebody is receiving maintenance, they have an automatic burden to do what they can to improve their financial situation, whether it's going to the community college, trying to get a manager's position, all sorts of other factors that somebody in similar circumstances, as a petitioner in this matter, could do. Now there was no suggestion to the trial court that the recipient of the maintenance was not doing what she should be doing, correct? I mean, was that ever even argued to the trial court? Well, I don't think that it was argued to the trial court, and I think part of that, if you look at the original divorce judgment, there were findings by the trial court which I think conflict a little with the statutory obligation. And no appeal was taken of that? No appeal was taken on that. I mean, there's a finding in the court that my client has ultimately stuck with that her financial situation was not going to dramatically improve. And so while I can't challenge the original divorce decree and go back several years at this point, I think that that is relevant through the factors included in A-5, or I believe Section 6 allows the court to look into what the original judgment said. And so I think the court kind of gave him more obligations that are found directly in the statute and to a degree waived some of hers by saying, you know, you're not going to really earn more money, you're going to get paid maintenance, and, you know, your obligations, she has a steady income, and that doesn't really need to change. It seemed to me like he hurt himself when he divested himself of an income-producing asset, the trailer. Oh, that is certainly a question of fact, and I think when looking at the evidence that came along with that, I think first of all the attachment of the original divorce decree, it showed that this business equipment did not hold a lot of equity. It was heavily encumbered. I believe the loan amounts were about $62 million. But the amount he sold it for, he didn't show that it reduced his bank loan. And so I think that's based on the statement of what the debt was in 2012 versus what it was in 2015, and so the debt was earning interest, a likely increase. I mean, this is an inference from the record, but the payment of the debt doesn't necessarily correlate that the debt would have gone down to $13,000 or whatever he got from the sale of the farm equipment. We shouldn't have to guess about that. If he used that $9,000 to pay down a debt, we should know that. But we don't from the record. I think the bigger point is even that even if there wasn't much equity in this piece of equipment so that the equipment itself wasn't worth much, it was still an income-producing piece of equipment. So over the years, he would have been able to use that to supplement his equipment. It's as if he said, I'm not going to do this anymore, and this is what he did for many, many years. This was his skill. So to put himself in a situation by selling income-producing equipment and basically putting himself in a situation where now he's possibly starting over trying to find a new trade or a new way to produce income seemed incredibly irresponsible given his obligations. I can certainly see where the court finds that. I think my response is that you have to go back to the history of who my client was and how he had these tenant farms, that there's no evidence that he has ever procured one of these clients himself. And there's all sorts of questions that I can think of across examination that you would ask somebody saying that there was a tenant income farm. For example, how would he pay the rent? How is he going to pay for his fertilizer and his seed? Does he have the basic operating capital to make this business continue to work? And the record, of course, I think when you get to this stage, it's never as clear as you'd actually like it to be from my perspective, but I think that the record does reflect that when he lost his second lease, he lost his ability. He harvested grain and had grain for sale, but also had expenses to go with it, and no prospect of being able to use any of his equipment during the next farm year, wherein he was still going to incur interest and expenses related to this equipment and related to his remaining debts related to his farm business. And so I think in divesting himself of this property, I can see where the court gleans that he kind of gave up, that he just got rid of it. We're not gleaning that. The trial court did, and we're saying why wouldn't we tend to agree with the trial court since the trial court's the fact finder. And I think it goes down to looking at what the court does know about his assets and the evidence of the debts in there, and the lack of evidence about how he actually would have gone about procuring more leases and sustaining his business. I think his testimony and the evidence that was presented was that he lost his two clients for his farming business, that he was out of the business for 2013, that he did not have any leads to deal with one business, and that the business was greatly indebted, and that he had two sets of equipment. He had his excavation business and he had his farm equipment, and he made a decision to part ways with his farm equipment, and to hopefully sustain and grow his excavation business. So I think that in the record, the evidence that he was essentially headed towards bankruptcy I think has a greater weight than the evidence that he just gave up and decided that he was going to be a farmer and that he had the opportunity. Now, in looking at the case law, and trying to determine where the cause of good faith and trying to supplement your income came from, I found several cases where payers and maintenance did not pay their maintenance, saw a reduction in maintenance when there was some sort of change in circumstance, and the court found that they weren't doing enough. I think the common trend that I saw in those cases that I don't really see here is, first of all, the initial reduction of income. There was an element of voluntary retirement or reduction in income where somebody basically, the payer of maintenance, stated, or at least it was found by the court, that they had a job, that they could have continued that job, and they made a decision whether or not it was to take a buyout package or retire early or do something else, and that then, after making the voluntary change, they didn't make a good faith effort to secure further income. They declined a request to work at the same company for less money. They had an expensive girlfriend and went and accrued a bunch of debt. There were various aspects here, but I think in looking at the good faith motive of my client, I don't think that he saw any opportunity in the future, and whether or not the court may not believe a word that he says, but I think there wasn't really expressed evidence that could contradict that. I hate to interrupt you, but you've been out of time for a few minutes. Okay. And so, for the reasons stated in my brief and before the court, I thank you for the opportunity to be here. It's a pleasure to be before this panel. I respectfully request that this court reverse the orders of the trial court entered either the February 21, 2014, or the April 2 order and remand it for further proceedings. All right. Thank you, counsel. We'll take this matter under advisement and be in recess. I assume, Mr. Mills, you're not planning to argue. I'm not. Okay. All right.